Good morning, Your Honors. May it please the Court, I'm Bill Hooks. I'm an attorney from Helena, Montana, representing Ashley Gray, and I would like to leave one minute for rebuttal. The psychologist's report and diagnoses in the trial, the post-verdict stage of the trial, provided the basis for relief on two separate grounds. The first ground was a basis for a motion for new trial, which the Court erred in denying. If we look at the five elements that this Court has articulated for reviewing motions for new trial in this context, a given period of time after the verdict, the first factor is satisfied here, and that is whether the newly discovered evidence is in fact newly discovered or whether it is simply or merely newly available evidence. The situation in this case was that the symptoms that are at issue here, Ashley's inability to recall the events immediately prior to and related to the shooting death of her father, that lack of ability to recall was known at the time. But what makes that diagnosis newly discovered evidence is the development of the cause or the reasons why Ashley could not recall. But how does that evidence bear on Ms. Gray's guilt or innocence? Your Honor, it goes to the – The crime of intentionally or recklessly. Well, it goes more fundamentally to the defense that her attorney posited during the trial. Did she in fact shoot her father or did he shoot himself? It goes to that element of the offense in two different ways. Number one, because it explains why she couldn't recall the post-traumatic stress disorder. So how does that increase the probability that the father shot himself rather than she shot him? It puts into context, Your Honor, the circumstances that led up to the shooting. See, you're not answering the question because this is a step removed. It really doesn't speak to the question of whether she pulled the trigger, whether he killed himself. It's an explanation for why she can't explain. But that's a step removed from the question of whether or not she did it or not. And it may never address whether she did it or not, whether she could recall or not. But her response, the disorientation, the psychological distress, the significant psychological disturbance, I think the doctor called it, was in response to her father's conduct. And it revealed that this was a pattern of conduct, the violent behavior, the self-destructive behavior. So it explains – her response was in relation to the conduct. And part of that conduct was the violent, self-destructive pattern. So it suggests or makes the defense, I wasn't the shooter, more plausible because it reflects on her father's conduct to which her inability to recall. I don't follow that at all. How does it make it more likely that she did not pull the trigger? And this is critical because, as you know, the last of the elements and probably the most important is that it would probably lead to a different result, would have led to acquittal. And I just don't understand how this is – it's going to make your client marginally more believable, perhaps, to the jury, but I don't understand how it leads to a different result. It would make her more believable to the jury, especially in response to the prosecutor's closing argument that Ashley's lack of memory was merely a convenience, i.e., that she was not telling the truth when she testified that she couldn't recall. So it would rebut that insinuation that Ashley was not telling the truth and that her lack of – her lack of memory. I wouldn't have thought it would offer an alternative explanation. That is a better way of saying it. I don't know that that would persuade the jury, though. I mean, is that so compelling as to lead us to say that under the test that we're supposed to apply that a new trial of granted would probably result in acquittal? That's an awfully high standard, and just to suggest that there's an explanation for silence doesn't necessarily point to that result, does it? Well, I agree, Your Honor. It is an awfully high standard. In this case, frankly, I think the other evidence, the circumstantial evidence, was something of a wash. If we look at the forensic evidence, the ballistic evidence, the testimony of the people who were in the home but didn't witness, of course, the actual shooting. The two people who were in the kitchen were the only ones who knew what was going on. Ashley, of course, was the survivor. Tragically, her father was dead, and we don't know just from what the other evidence was exactly what happened. So Ashley and her ability to recall were critical. And, again, I guess I'm approaching this somewhat back to front. If we look at the diagnosis that the inability to recall was the product of this significant psychological disturbance that was sustained because of her father's conduct at that moment and previously, that helps to establish that her father's conduct on that night, at those moments in the kitchen with the rifle, produced this lack of recall. So if we take a step backward, it's suggesting that her father's violent, self-destructive conduct, in fact, was, as defense counsel posited, that having made suicidal comments previously, Mr. Gray put the rifle in his mouth and pulled the trigger. Counsel, what is the standard of review for this motion? I believe it's subject to the abuse of discretion. The abuse of discretion. So I'm to suggest, based on what you say here, that it was the trial judge's abuse of his discretion not to do this. Even though I have a question mark about whether one used due diligence, I have a question mark about whether it even goes to an acquittal. Even though I have a question mark about whether it's material, I'm to say it's an abuse of the trial court's discretion. That is our provision, Your Honor. The trial court, having listened to the evidence, having listened to what went on here, knowing the situation that was existing here, abused his discretion by allowing this to happen? That is correct, Your Honor. Don't we have a case, Coastal Transfer v. Toyota Motor Sales, that says that an expert can't change his findings and be new evidence? That's a Ninth Circuit case, isn't it? I don't have a familiarity with that case. I certainly don't disagree. Well, they've never really addressed the post-trial psychological report, whether that's newly discovered or not. But the bottom line is, what you're trying to say is, we knew all this time that this lady didn't know what was going on. She couldn't remember. We didn't do anything about it, even though we knew that. And now somehow this report, which my colleagues have adequately questioned, says this judge abused his discretion. That is our position, Your Honor. I guess I'm trying to figure out, when doesn't a judge abuse his discretion if this is an abuse? Well, Your Honor, I think in this case, if I could refer to one of the questions that you've raised regarding due diligence, the judge in this case felt that the Gray family or the defense had not shown that the report and the diagnoses could not have been obtained with due diligence previously. And the judge in this case made a finding that if the family had the ability to borrow money to retain the psychologist post-verdict, then they certainly could have done so pre-verdict at a different time when it may  have been a different trial. That's an abuse of discretion. Is there any record evidence at all with regard to the ability of the family to afford? The only record evidence, Your Honor, is in the representation of trial counsel. And that representation of counsel is not evidence, is it? Is there any evidence at all? No, there isn't. So how can we describe the finding of fact as an abuse of discretion if, in fact, there's no contrary evidence in the record? There's no evidence either way in the record. That's exactly right, Your Honor. And we suggested that the trial court should have had a hearing on this before Isn't it your burden to put in front of the trial court enough evidence of diligence or some evidence of diligence? I mean, the hearing wasn't necessarily necessary. You could have had a declaration about the diligence. Your Honor, I concede that the defense has the burden of the movement to come forward with enough persuasive representations or evidence on which to convince the court of a certain action. What was the diligence in front of the court? The diligence, again, Your Honor, is simply defense counsel's representation in his post-verdict motion asking for a continuance of the sentencing hearing and I think asking for to postpone that, but also the motion for the new trial based on the doctor's report. And the defense at trial was that her father killed himself. He killed himself either intentionally or recklessly in the handling of the gun. And what evidence did you put on to that effect? What evidence did the defense put on at trial? The evidence that was presented at trial had to do with essentially examining the government's experts. And evidence also from, I think, the divorced, the victim's divorced wife regarding acts of violence and his reputation in the community for violence and self-destructive behavior. Thank you. Thank you. Thank you. Good morning. May it please the court, my name is Joe Thagard. I'm an assistant United States attorney from Helena, Montana. I represent the government in this matter. Turning to the issue of the new trial, Judge Lovell properly ruled within his of the crime. Judge Lovell basically held that the disputed elements essentially concerned who did this killing and what the mental state was. And as the panelists touched on already, the evidence in this instance, the newly discovered evidence, really only went to why this defendant could not recall the events of the evening. It didn't go to whether or not she committed this murder. And for that reason alone, the newly discovered evidence did not merit a new trial. Additionally, also touched upon by the panel, the evidence certainly wasn't compelling enough that it would have resulted in an acquittal. Again, it simply would offer an explanation for why this young woman could not recall the events of the evening. In fact, as I pointed out, at least from a lay perspective, I think this is something that a jury wouldn't necessarily require assistance with. It was addressed in closing argument by defense counsel that she was obviously shocked and traumatized. And I think that we would all concede that that's something that we as lay people can accept. If this witness had appeared during trial, there isn't any question, is there, that it would have been appropriate expert testimony to be offered to the jury? Yeah, I think it would have, Judge. Otherwise, I don't have anything to add unless the panel has additional questions for me. Would you, I was just able to get a transcript of the 9-11 call. It somehow, it wasn't in the excerpts and it wasn't part of the original record. We finally got a copy of it. I was trying to look at the, in order to weigh the materiality of the newly discovered evidence to see what other evidence was in there. What was the evidence in the 9-11 tape as to Ms. Gray's having shot her father? Basically, as I recall, while Stacy Work, who was the common law wife of the decedent, was on the phone, Work asked Gray why she did it. And Gray said simply, she didn't know. And that would be, Your Honor, at excerpt of the record 56 and its record of the trial, page 7. And then she also heard, Gray was overheard saying she was sorry and that she killed her dad. And then she makes some other statements sort of on the other end that she wasn't there and nothing had happened. But there were those declarations. So the theory of the prosecution was what exactly? Because there were fingerprints, both fingerprints on the gun. The theory of the prosecution, Your Honor, was essentially that these two were drinking, that there had been some arguments, that there was bad blood in the past, that he had brought out this firework, the decedent had brought this firearm out at some point, and that at some point it was transported. And it was transferred to her, and she shot him in the mouth. Okay. Does anyone else have any questions? I have no other questions. All right. Thank you very much, counsel. Thank you. The case of U.S. v. Gray will be submitted. We'll take up U.S. v. Kummer.
judges: Wardlaw, Clifton, Smith